**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

**JULY 27, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                         No. 126067

DAVID WILLIAM SCHAEFER,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                         No. 127142

JAMES RICHARD LARGE,

    Defendant-Appellee.

_____

**BEFORE THE ENTIRE BENCH**

**YOUNG, J.**

    We granted leave to appeal in these cases and ordered that they be argued and submitted together to clarify the elements of operating a motor vehicle while under the influence of liquor and causing death ("OUIL causing death"), MCL 257.625(4). In addressing this issue, we

revisit our decision in *People v Lardie*,[1] which held, *inter alia*, that to convict a defendant of OUIL causing death, the prosecution must prove "that the defendant's *intoxicated* driving was a *substantial cause* of the victim's death."[2]

We conclude that the *Lardie* Court erred in holding that the defendant's "*intoxicated* driving"[3] must be a substantial cause of the victim's death. The plain text of § 625(4) does not require that the prosecution prove the defendant's intoxicated state affected his or her operation of the motor vehicle. Indeed, § 625(4) requires no causal link at all between the defendant's intoxication and the victim's death. The statute requires that the defendant's *operation* of the motor vehicle, not the defendant's intoxicated manner of driving, must cause the victim's death. The defendant's status as "intoxicated" is a separate element of the offense of OUIL causing death. It specifies the class of persons subject to liability under § 625(4): intoxicated drivers.

---

[1] 452 Mich 231; 551 NW2d 656 (1996).

[2] *Id*. at 259-260 (emphasis added).

[3] *Id*. at 234 (emphasis in original).

Quite simply, by enacting § 625(4), the Legislature intended to punish "operating while intoxicated," not "operating in an intoxicated manner." Therefore, to the extent that *Lardie* held that the defendant's *intoxicated* driving must be a substantial cause of the victim's death, it is overruled.[4]

Accordingly, in *People v Schaefer*, we vacate the judgment of the Court of Appeals and remand the case to the Court of Appeals to address defendant's remaining argument that the trial court erred so as to require reversal in making repeated references to defendant's stipulation as to his 0.16 blood-alcohol level during the jury instructions. In *People v Large*, we reverse the judgment of the Court of Appeals and remand the case to the district court for reconsideration of whether to bind defendant over on the charge of OUIL causing death in light of the principles set forth in this opinion.

---

[4] We do not disturb our other holdings in *Lardie*, including that the prosecution need not prove negligence or gross negligence by the defendant, that the defendant must have "voluntarily" decided to drive "knowing that he had consumed an intoxicating liquor," and that § 625(4) comports with constitutional due process principles. *Id.* at 249-251, 265-267.

## I. FACTS AND PROCEDURAL HISTORY

### A. *PEOPLE v SCHAEFER*

In January 2002, defendant was driving on Interstate-75 in the city of Lincoln Park with his friend as a passenger in the vehicle. Defendant admitted that he consumed three beers before getting behind the wheel.[5] According to several eyewitnesses, defendant was tailgating various cars and driving erratically.

While on the freeway, defendant's passenger abruptly told him that they had reached their freeway exit. Defendant swerved to exit the freeway, hit the curb, and lost control of the car. The car rolled over, killing the passenger. Defendant stipulated at trial that he had a 0.16 blood-alcohol level almost three hours after the accident.[6]

Defendant was charged with OUIL causing death[7] and manslaughter with a motor vehicle.[8] At trial, a defense

---

[5] Defendant denied drinking the beer contained in the empty bottles found in his vehicle. He claimed that the bottles were left over from a party.

[6] At the time defendant was charged, § 625(1) set the statutory intoxication threshold at a blood-alcohol content of 0.10 grams per one hundred milliliters. Pursuant to 2003 PA 61, however, the statutory intoxication threshold has been reduced from 0.10 to 0.08.

[7] MCL 257.625(4).

4

expert witness testified that the exit ramp was safe for speeds up to thirty miles per hour, but dangerous at any greater speed. He stated that he would have expected numerous accidents, including rollovers, during the thirty-six years that the ramp was in existence and that he was surprised to learn that there had been no other rollover accidents in over twenty years.

In instructing the jury, instead of reading the standard instruction for OUIL causing death, CJI2d 15.11,[9]

---

[8] MCL 750.321.

[9] CJI2d 15.11 provided at the time:

> (1) The defendant is charged with the crime of operating a motor vehicle under the influence of intoxicating liquor . . . or with an unlawful bodily alcohol level, or while impaired, and in so doing, causing the death of another person. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> * * *
>
> (4) Third, that the defendant was under the influence of intoxicating liquor . . ., *or* had an unlawful bodily alcohol level, *or* was impaired while [he / she] was operating the vehicle.
>
> (5) Fourth, that the defendant voluntarily decided to drive knowing that [he / she] had consumed alcohol . . . and might be intoxicated.

the trial court read the text of the OUIL causing death statute. When the jury asked for additional instructions during deliberations, the trial court said all it could do was tell them what the statute said. Thus, the court again read the statute to the jury. The jury convicted defendant of OUIL causing death and negligent homicide.[10] Defendant was sentenced to concurrent prison terms of fifty months to fifteen years for OUIL causing death and one to two years for negligent homicide.

On appeal, the Court of Appeals affirmed defendant's negligent homicide conviction, but reversed his conviction of OUIL causing death.[11] In a two-to-one decision, the Court of Appeals held that the trial court erred in instructing the jury because it did not inform the jury that defendant's *intoxicated* driving must be a "substantial cause" of the victim's death, as required by *Lardie*.[12] The

---

(6) Fifth, that the defendant's intoxicated [or impaired] driving was a substantial cause of the victim's death.

[10] Negligent homicide, MCL 750.324, is a lesser-included offense of manslaughter with a motor vehicle. MCL 750.325; *People v Weeder*, 469 Mich 493, 497-498; 674 NW2d 372 (2004).

[11] Unpublished opinion per curiam, issued March 25, 2004 (Docket No. 245175).

[12] *Id.*, slip op at 5.

6

dissent concluded that the trial court properly instructed the jury on the causation element of OUIL causing death by reading the statute to the jury. We granted the prosecutor's application for leave to appeal and ordered that this case be argued and submitted with *People v Large*.[13]

## B. *PEOPLE V LARGE*

In July 2003, while driving on a road in Jackson County, defendant struck and killed an eleven-year-old girl who was riding her bicycle in the late afternoon. The girl emerged onto the road after descending from an elevated driveway, the street view of which was partially obstructed by vegetation. The bicycle that she was riding did not have any brakes. Defendant was driving approximately five miles an hour over the posted speed limit of fifty-five miles per hour. Despite swerving in an attempt to avoid hitting the girl, the two collided. At the time of the accident, defendant had a 0.10 blood-alcohol level.

Defendant was charged with manslaughter with a motor vehicle,[14] OUIL causing death,[15] OUIL (second offense),[16] and

---

[13] 471 Mich 923 (2004).

[14] MCL 750.321.

[15] MCL 257.625(4).

7

violation of license restrictions.[17]   At defendant's preliminary examination, the prosecution called a sheriff's deputy who testified as an expert witness in accident reconstruction.  The deputy testified that the accident was unavoidable, opining that the collision still would have occurred had defendant been sober and driving the speed limit.  According to the deputy, a sober driver would have required at least 1 1/2 seconds to notice the girl and attempt to avoid hitting her.  On the basis of his investigation, the deputy concluded that the girl emerged onto the road, and the impact occurred, all within less than one second.

The district court bound defendant over on all counts except OUIL causing death.  On appeal to the circuit court, the court refused to reinstate the charge of OUIL causing death.[18]   The prosecution then appealed to the Court of Appeals, which affirmed the circuit court.[19]   Relying on *Lardie*, the Court of Appeals held that "[t]he prosecution

---

[16] MCL 257.625(1).

[17] MCL 257.312.

[18] The circuit court also dismissed the manslaughter charge and remanded the case to the district court on the two remaining misdemeanor counts.

[19] Unpublished opinion per curiam, issued August 10, 2004 (Docket No. 253261).

failed to present sufficient evidence to justify a finding that defendant's intoxicated driving was a substantial cause of the victim's death . . . ."[20] In refusing to entertain the prosecutor's argument that *Lardie* was wrongly decided, the Court of Appeals stated that "'[a] decision of the Supreme Court is binding upon this Court until the Supreme Court overrules itself.' Therefore, we may not revisit the holding of *Lardie*."[21] We granted the prosecutor's application for leave to appeal and ordered that this case be argued and submitted with *People v Schaefer*.[22]

## II.  STANDARD OF REVIEW

Statutory interpretation is a question of law that is reviewed by this Court de novo.[23] Similarly, jury instructions that involve questions of law are also reviewed de novo.[24] In reviewing a district court's decision to bind over a defendant, the lower court's

---

[20] *Id.*, slip op at 4.

[21] *Id.* (citation omitted).

[22] 471 Mich 923 (2004).

[23] *People v Moore*, 470 Mich 56, 61; 679 NW2d 41 (2004); *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003).

[24] *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003); *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003).

9

determination regarding the sufficiency of the evidence is reviewed for an abuse of discretion, but the lower court's rulings based on questions of law are reviewed de novo.[25]

### III. ANALYSIS

### A. MCL 257.625(4)

Our Legislature first enacted the "OUIL causing death" statute as part of 1991 PA 98 in an attempt to increase the criminal penalties associated with driving while intoxicated.[26] The Legislature evidently believed that sentences resulting from involuntary manslaughter and negligent homicide convictions inadequately deterred intoxicated drivers from getting behind the wheel.[27] Thus, to address this concern, the Legislature enacted the OUIL causing death statute, which provides more severe penalties, with the apparent expectation that these heightened penalties would deter intoxicated individuals from driving.

Our OUIL causing death statute, MCL 257.625(4), provides:

---

[25] *People v Yost*, 468 Mich 122, 126-127; 659 NW2d 604 (2003); *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991).

[26] *Lardie, supra* at 253 & n 33.

[27] *Id.* at 246-247, 253.

A person, whether licensed or not, who operates a motor vehicle in violation of subsection (1) [under the influence of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance, or having an unlawful body alcohol content], (3) [visibly impaired by the consumption of alcoholic liquor, a controlled substance, or a combination of alcoholic liquor and a controlled substance], or (8) [any body content of a schedule 1 controlled substance] *and by the operation of that motor vehicle causes the death of another person* is guilty of a crime as follows:

(a) . . . [A] felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. [28]

## B.   *PEOPLE V LARDIE*

In *People v Lardie*, this Court was presented with a due process challenge to the OUIL causing death statute.[29] The defendants in the two consolidated cases in *Lardie* alleged that § 625(4) imposed criminal liability without requiring a culpable mental state.  In rejecting the defendants' due process arguments, this Court held that

---

[28]  MCL 257.625(4) (emphasis added).  The reference to subsection 8—intoxication by a schedule 1 controlled substance—in § 625(4) was added as part of 2003 PA 61.  At the time that defendants Schaefer and Large were charged, § 625(4) referenced only subsections 1 and 3.

[29] Although § 625(4) has been amended since our decision in *Lardie*, none of the amendments limits the holding of *Lardie* or is otherwise material to the resolution of the present cases.

OUIL causing death is a general intent crime and that "the culpable act that the Legislature wishes to prevent is the one in which a person becomes intoxicated and then decides to drive."[30] We further held that "there is no requirement [under § 625(4)] that the people prove gross negligence or negligence" because "the Legislature essentially has presumed that driving while intoxicated is gross negligence as a matter of law."[31]

This Court then proceeded to examine the causation element of the OUIL causing death offense, stating:

> The Legislature passed [§ 625(4)] in order to reduce the number of alcohol-related traffic fatalities. The Legislature sought to deter drivers who are "willing to risk current penalties" from drinking and driving. In seeking to reduce fatalities by deterring drunken driving, the statute must have been designed to punish drivers when their *drunken* driving caused another's death. Otherwise, the statute would impose a penalty on a driver even when his wrongful decision to drive while intoxicated had no bearing on the death that resulted. Such an interpretation of the statute would produce an absurd result by divorcing the defendant's fault from the resulting injury. We seek to avoid such an interpretation.[32]

---

[30] *Lardie*, *supra* at 245. We stated, "[t]he Legislature must reasonably have intended that the people prove a mens rea by demonstrating that the defendant purposefully drove while intoxicated or, in other words, that he had the general intent to perform the wrongful act." *Id*. at 256.

[31] *Id*. at 249, 251.

[32] *Id*. at 256-257 (emphasis in original).

Thus, relying on policy justifications and its belief that a contrary construction would lead to an "absurd result," the *Lardie* Court held that "in proving causation, the people must establish that the particular defendant's decision to drive while intoxicated produced a *change in that driver's operation of the vehicle* that caused the death of the victim."[33] According to the *Lardie* Court, "[i]t is the *change* that such intoxication produces, and whether it caused the death, which is the focus of [the causation] element of the crime."[34]

The *Lardie* Court summarized the three distinct elements the prosecution must prove in securing a conviction for OUIL causing death:

> (1) [That] the defendant was operating his motor vehicle while he was intoxicated, (2) that he voluntarily decided to drive knowing that he had consumed alcohol and might be intoxicated, and *(3) that the defendant's intoxicated driving was a substantial cause of the victim's death.*[35]

C.    PRINCIPLES OF STATUTORY INTERPRETATION

When interpreting a statute, it is the court's duty to give effect to the intent of the Legislature as expressed

---

[33] *Id.* at 258 (emphasis added).

[34] *Id.* at 258 n 47 (emphasis in original).

[35] *Id.* at 259-260 (emphasis added).

in the actual language used in the statute.[36] It is the role of the judiciary to interpret, not write, the law.[37] If the statutory language is clear and unambiguous, the statute is enforced as written.[38] Judicial construction is neither necessary nor permitted because it is presumed that the Legislature intended the clear meaning it expressed.[39]

### D.   THE CAUSATION ELEMENT OF § 625(4)

The plain text of § 625(4) requires no causal link between the defendant's intoxication and the victim's death.[40]   Section 625(4) provides, "A person, whether licensed or not, who operates a motor vehicle [while intoxicated] and *by the operation* of that motor vehicle

---

[36] *Halloran v Bhan*, 470 Mich 572, 576; 683 NW2d 129 (2004); *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

[37] *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002); *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

[38] *People v Laney*, 470 Mich 267, 271; 680 NW2d 888 (2004); *People v Phillips*, 469 Mich 390, 395; 666 NW2d 657 (2003).

[39] *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002); *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

[40] Defendant Schaefer admits this point, stating that "[a] bare reading of the statute does not require that the defendant's *intoxicated* driving be a substantial cause of the victim's death."  Schaefer brief at 12-13 (emphasis in original).   He further states, "[t]he statute does not require a nexus between the drunken driving, and the cause of the accident."  *Id*. at 15.

*causes* the death of another person is guilty of a crime . . . ."[41] Accordingly, it is the defendant's *operation* of the motor vehicle that must cause the victim's death, not the defendant's "intoxication." While a defendant's status as "intoxicated" is certainly an element of the offense of OUIL causing death, it is not a component of the *causation* element of the offense. Justice Weaver succinctly stated this point in her concurrence in *Lardie*:

> The plain language of the statute clearly indicates that the Legislature intended causation to turn on the fact that the defendant *operated* the vehicle while intoxicated, rather than the *changed manner in which, or how, the defendant operated* the vehicle while intoxicated.[42]

The *Lardie* Court's reliance on policy considerations in construing § 625(4) was misplaced. It is true that the cardinal rule of statutory interpretation is to give effect to the intent of the Legislature.[43] However, the Legislature's intent must be ascertained from the actual text of the statute, not from extra-textual judicial

---

[41] MCL 257.625(4) (emphasis added).

[42] *Lardie, supra* at 273 (emphasis in original).

[43] *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004); *Parkwood Ltd Dividend Housing Ass'n v State Housing Dev Auth*, 468 Mich 763, 772; 664 NW2d 185 (2003).

divinations of "what the Legislature really meant."[44]  As we stated in *Lansing Mayor*, *supra*, "rather than engaging in legislative mind-reading to discern [legislative intent], we believe that the best measure of the Legislature's intent is simply the words that it has chosen to enact into law."[45]

The *Lardie* Court also erred in assuming that judicial adherence to and application of the actual text of § 625(4) "would produce an absurd result."  The result that the Court in *Lardie* viewed as "absurd"-imposing criminal liability under § 625(4) when a victim's death is caused by a defendant's *operation* of the vehicle rather than the defendant's *intoxicated* operation-reflects a policy choice adopted by a majority of the Legislature.  A court is not free to cast aside a specific policy choice adopted on behalf of the people of the state by their elected representatives in the Legislature simply because the court would prefer a different policy choice. To do so would be to empower the least politically accountable branch of government with unbridled policymaking power.  Such a model

---

[44] See *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 164; 680 NW2d 840 (2004); *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 762; 641 NW2d 567 (2002).

[45] *Lansing Mayor*, *supra* at 164.

of government was not envisioned by the people of Michigan in ratifying our Constitution, and modifying our structure of government by judicial fiat will not be endorsed by this Court.

Instead, we must construe the causation element of § 625(4) according to the actual text of the statute. Section 625(4) plainly requires that the victim's death be caused by the defendant's *operation* of the vehicle, not the defendant's *intoxicated* operation. Thus, the manner in which the defendant's intoxication affected his or her operation of the vehicle is unrelated to the causation element of the crime. The defendant's status as "intoxicated" is a separate element of the offense used to identify the class of persons subject to liability under § 625(4).[46]

---

[46] The flaw in the *Lardie* Court's analysis is readily apparent when one considers the closely analogous crime of operating a vehicle with a suspended or revoked license and causing death. MCL 257.904(4). The text of § 904(4) parallels the language in § 625(4). Section 904(4) provides:

> A person who operates a motor vehicle [under a suspended or revoked license] and who, *by operation of that motor vehicle, causes the death of another person* is guilty of a felony . . . . [Emphasis added.]

Under the *Lardie* Court's rationale, § 904(4) would require that the defendant's suspension or revocation somehow affect (i.e., be a "substantial cause" of) the

17

Accordingly, we overrule *Lardie* only to the extent it held that the prosecution must prove "that the defendant's *intoxicated* driving was a *substantial cause* of the victim's death."[47]   We hold that the prosecution, in proving OUIL causing death, must establish beyond a reasonable doubt that  (1) the defendant was operating his or her motor vehicle in violation of MCL 257.625(1), (3), or (8); (2) the defendant voluntarily decided to drive, knowing that he or she had consumed an intoxicating agent and might be intoxicated; and (3) the defendant's operation of the motor vehicle caused the victim's death.[48]

It is ironic that the *Lardie* Court recognized that the Legislature's intent in passing § 625(4) was "to deter

---

manner by which the defendant operates the vehicle before criminal liability may be imposed.  There is obviously no textual basis for such a conclusion, just as there was no such basis in *Lardie*.  As Justice Weaver pointed out in her concurrence in *Lardie*, the *Lardie* majority fundamentally misunderstood the nature of a "status crime."  *Lardie*, *supra* at 271 n 8.  The *Lardie* majority mistakenly took the status element of the crime—that the defendant was intoxicated—and fused it with the causation element of the offense.  Therefore, to the extent that the *Lardie* Court was simply attempting to articulate a proximate cause requirement by creating its "substantial cause" test, the *Lardie* Court erred in conflating the "status" and "causation" elements of the crime.

[47] *Lardie*, *supra* at 259-260 (emphasis added).  As mentioned in note 4 of this opinion, we do not disturb the other holdings in *Lardie*.

[48] MCL 257.625(4); cf. *Lardie*, *supra* at 259.

18

th[e] gravely dangerous conduct"[49] of driving while intoxicated, yet interpreted § 625(4) in such a way so as to limit substantially the applicability of § 625(4) beyond that which the Legislature envisioned. As Justice Weaver noted in her *Lardie* concurrence, the *Lardie* majority's "demanding burden of proof"-requiring the prosecution to show that the defendant's intoxication *changed* his or her manner of operation-"was not intended by the Legislature and is not found in the language of the statute."[50] Unlike the *Lardie* Court, we believe that the best way to "deter this gravely dangerous conduct" is to enforce the statute *as written* and thereby give the statute the teeth that the Legislature intended.[51]

Having determined that § 625(4) requires the victim's death to be caused by the defendant's *operation* of the

---

[49] *Lardie, supra* at 253.

[50] *Id*. at 272.

[51] As we noted in *Robinson v Detroit*, 462 Mich 439, 463-468; 613 NW2d 307 (2000), we do not lightly overrule precedent. However, we do not believe that any of the considerations discussed in *Robinson* counsel against overruling *Lardie* in the present cases. Notably, we find it difficult to conceive any possible situation in which a "reliance interest" would ever exist in the context of a criminal statute. Additionally, as noted by Justice Weaver in *Lardie*, the majority opinion in *Lardie* defies "practical workability" because the "change" in operating ability due to intoxication that the prosecution must demonstrate creates a nearly impossible burden of proof.

vehicle, rather than the defendant's *intoxicated manner of operation*, we turn to the issue of defining the term "cause." In the criminal law context, the word "cause" has acquired a unique, technical meaning.[52] Accordingly, pursuant to MCL 8.3a, we must construe the term "according to [its] peculiar and appropriate meaning" in the law.[53]

In criminal jurisprudence, the causation element of an offense is generally comprised of two components: factual cause and proximate cause.[54] The concept of factual causation is relatively straightforward. In determining whether a defendant's conduct is a factual cause of the

---

[52] Indeed, for more than a century, this Court has recognized that "cause" is a term of art in criminal law. See *People v Cook*, 39 Mich 236 (1878); *People v Rockwell*, 39 Mich 503 (1878); *People v Townsend*, 214 Mich 267, 277-280; 183 NW 177 (1921).

[53] MCL 8.3a provides:

> All words and phrases shall be construed and understood according to the common and approved usage of the language; *but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.* [Emphasis added.]

See also *Babcock*, *supra* at 257-258; *People v Jones*, 467 Mich 301, 304-305; 651 NW2d 906 (2002).

[54] *People v Tims*, 449 Mich 83, 95; 534 NW2d 675 (1995); see also 1 Torcia, Wharton's Criminal Law (15th ed), § 26; LaFave & Scott, Handbook on Criminal Law, § 35, p 246.

result, one must ask, "but for" the defendant's conduct, would the result have occurred?[55] If the result would not have occurred absent the defendant's conduct, then factual causation exists.[56]

The existence of factual causation alone, however, will not support the imposition of criminal liability.[57] Proximate causation must also be established. As we noted in *Tims*, proximate causation is a "legal colloquialism."[58] It is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural.[59] Thus, a

---

[55] *Tims, supra* at 95; *People v Barnes*, 182 Mich 179, 194; 148 NW 400 (1914); see also 1 Torcia, Wharton's Criminal Law (15th ed), § 26; Perkins, Criminal Law (2d ed), pp 687-688; LaFave & Scott, Handbook on Criminal Law, § 35, p 249 (1972) ("In order that conduct be the [factual] cause of a particular result it is almost always sufficient that the result would not have happened in the absence of the conduct; or, putting it another way, that "but for" the antecedent conduct the result would not have occurred.").

[56] *Tims, supra* at 95.

[57] *Tims, supra* at 95.

[58] *Id.* at 96.

[59] See, e.g., Beale, *The proximate consequences of an act*, 33 Harv L R 633, 640 (1920).

proximate cause is simply a factual cause "of which the law will take cognizance."[60]

For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a "direct and natural result" of the defendant's actions.[61] In making this determination, it is necessary to examine whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken. If an intervening cause did indeed *supersede* the defendant's act as a legally significant causal factor, then the defendant's conduct will not be deemed a proximate cause of the victim's injury.[62]

The standard by which to gauge whether an intervening cause supersedes, and thus severs the causal link, is generally one of reasonable foreseeability. For example, suppose that a defendant stabs a victim and the victim is

---

[60] 1 Torcia, Wharton's Criminal Law (15th ed), § 26, pp 147-148; See also Perkins, Criminal Law (2d ed), p 690.

[61] *Barnes*, *supra* at 198; see also 1 Torcia, Wharton's Criminal Law (15th ed), § 26; Perkins, Criminal Law (2d ed), pp 690-695; LaFave & Scott, Handbook on Criminal Law, § 35, pp 251-252 (1972); McLaughlin, *Proximate cause*, 39 Harv L R 149, 183 (1925).

[62] *Cook*, *supra* at 239-240; *Townsend*, *supra* at 277-279; *People v Vanderford*, 77 Mich App 370, 372-373; 258 NW2d 502 (1977).

then taken to a nearby hospital for treatment. If the physician is negligent in providing medical care to the victim and the victim later dies, the defendant is still considered to have proximately caused the victim's death because it is reasonably foreseeable that negligent medical care might be provided.[63] At the same time, *gross negligence* or intentional misconduct by a treating physician is not reasonably foreseeable, and would thus break the causal chain between the defendant and the victim.[64]

The linchpin in the superseding cause analysis, therefore, is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable—e.g., *gross* negligence or

---

[63] *Cook*, *supra* at 240. See also Perkins, Criminal Law (2d ed), p 716 ("And negligence, unfortunately, is entirely too frequent in human conduct to be considered 'abnormal.'"); LaFave & Scott, Handbook on Criminal Law, § 35, p 259 ("In short, mere negligence in medical treatment is not so abnormal that the defendant should be freed of liability.").

[64] *Cook*, *supra* at 240. See also Perkins, Criminal Law (2d ed), p 719; LaFave & Scott, Handbook on Criminal Law, § 35, p 259.

intentional misconduct—then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death.

In criminal law, "gross negligence" is not merely an elevated or enhanced form of ordinary negligence. As we held in *Barnes*, *supra*, in criminal jurisprudence, gross negligence "means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to a criminal intent."[65]

Accordingly, in examining the causation element of OUIL causing death, it must first be determined whether the defendant's operation of the vehicle was a factual cause of the victim's death. If factual causation is established, it must then be determined whether the defendant's operation of the vehicle was a proximate cause. In doing so, one must inquire whether the victim's death was a direct and natural result of the defendant's operation of the vehicle and whether an intervening cause may have superseded and thus severed the causal link.[66] While an act

---

[65] *Barnes*, *supra* at 198.

[66] Justice Cavanagh suggests in his partial dissent that both the *Lardie* Court and the majority in the present cases require a "more demanding standard" of proximate cause in the criminal context than that found in tort law. *Post* at 2. Justice Cavanagh mischaracterizes both *Lardie* and the present cases. First, we do not read *Lardie* to impose the

24

of God or the *gross* negligence or intentional misconduct by the victim or a third party will generally be considered a superseding cause, *ordinary* negligence by the victim or a third party will not be regarded as a superseding cause because ordinary negligence is reasonably foreseeable.[67]

_____

heightened form of proximate cause in criminal law that Justice Cavanagh advocates. In fact, in *Tims*, which was decided just one year before *Lardie*, we explicitly rejected that same argument. Second, contrary to Justice Cavanagh's assertion, we do not adopt a heightened form of proximate cause in the present cases. Instead, we are simply applying the standard of proximate cause that this Court articulated in *Tims* and that has existed in our criminal jurisprudence for well over a century.

[67] Had the Legislature intended to require only factual causation and not proximate causation as well, the Legislature would have instead used the words "*results* in death" rather than "*causes* the death."

Indeed, MCL 257.617, which requires motorists involved in accidents to remain at the scene of the accident, specifically uses the phrase "results in . . . death." Section 617(2) provides:

> [I]f the individual [flees the scene of an accident] and the accident *results in serious impairment of a body function or death*, the individual is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both. [Emphasis added.]

Accordingly, the Legislature is well aware of how to draft a statute that requires only factual causation and not proximate causation.

The United States Court of Appeals reached the same conclusion in construing an analogous federal criminal statute: distribution of a controlled substance resulting in death, 21 USC 841. Specifically § 841(a)(1) makes it

## E. APPLICATION

### i. PEOPLE V SCHAEFER

Defendant argues that the trial court erred in instructing the jury on OUIL causing death in two respects. First, defendant contends that the trial court's instruction on the causation element of the crime was

---

illegal to "knowingly or intentionally . . . distribute . . . a controlled substance" and § 841(b)(1)(C) provides an enhanced sentence "if death or serious bodily injury *results* from the use of such substance . . . ." (Emphasis added.) In recently addressing the proximate cause issue, the United States Court of Appeals for the Ninth Circuit held:

> [P]roximate cause is not a required element for conviction and sentencing under § 841(b)(1)(C). All that is necessary under the statutory language is that "death . . . results" from the offense described in § 841(a)(1). . . . Cause-in-fact is required by the "results" language, but proximate cause . . . is not a required element. [*United States v Houston*, 406 F3d 1121, 1124-1125 (CA 9, 2005).]

In so holding, the Ninth Circuit joined numerous other circuits that reached the same conclusion. See *United States v Soler*, 275 F3d 146, 152 (CA 1, 2002); *United States v McIntosh*, 236 F3d 968, 972-973 (CA 8, 2001); *United States v Robinson*, 167 F3d 824, 830-832 (CA 3, 1999); *United States v Patterson*, 38 F3d 139, 145-146 (CA 4, 1994).

Therefore, if the Legislature had intended to eliminate proximate causation as an element of OUIL causing death, it would have used the phrase "and by the operation of that motor vehicle the death of another person *results*." The Legislature, however, deliberately chose to use the word "cause" in § 625(4) and thereby incorporated the technical, legal meaning of the term.

26

flawed. Second, defendant argues that the trial court erred when it reminded the jury three times during instructions about defendant's stipulation as to his 0.16 blood-alcohol level.

In initially instructing the jury on the causation element of OUIL causing death, the trial court read the text of § 625(4) to the jury. Defendant objected to the instruction, arguing that the standard jury instruction for OUIL causing death, CJI2d 15.11, which incorporated this Court's *Lardie* holding, should have been read instead. Less than an hour into deliberations, the jury specifically requested clarification from the trial court on the causation element of OUIL causing death:

> *The Court*: Okay. You're asking to explain under the influence, as is stated in Count I [OUIL causing death]. [I]s that what you want to know?
>
> *Juror No. 11*: *Also causing death.*
>
> *The Court*: I'm sorry; also what?
>
> *Juror No. 11*: Under the influence *causing death.*
>
> *The Court*: Yeah, okay. All I can do is tell you what the statute says. If that was the case, you have to decide that. [Emphasis added.]

Defendant again objected to the instruction, arguing that the trial court did not adequately explain the causation element of OUIL causing death.

We agree that the trial court erred in instructing the jury on causation, but not for the reasons offered by defendant. Defendant argues that the causation instruction was flawed because the trial court did not instruct the jury that defendant's intoxicated driving must be a "substantial cause" of the victim's death, as required by *Lardie*. As discussed above, the *Lardie* Court erred in requiring that the defendant's *intoxication*, rather than the defendant's *operation* of the motor vehicle, constitute the substantial cause. Accordingly, the trial court's causation instruction was not flawed in the manner asserted by defendant. Instead, we conclude that the trial court erred because the word "cause" in § 625(4) is a legal term of art normally not within the common understanding of jurors, and thus, simply reading the statute to the jury was insufficient. The jury could not be expected to understand that the statute required the prosecutor to prove *both* factual causation and proximate causation.[68]

---

[68] While the trial court was not required to read the jury the standard criminal jury instruction because they are not binding authority, *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985), the court was nevertheless

28

Having determined that the causation instruction was flawed, we turn to whether the error was harmless. Mere error alone in instructing the jury is insufficient to set aside a criminal conviction. Instead, a defendant must establish that the erroneous instruction resulted in "a miscarriage of justice."[69] Specifically, by enacting MCL 769.26, our Legislature has provided:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, *on the ground of misdirection of the jury*, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in *a miscarriage of justice*.[70]

As we noted in *People v Cornell*,[71] in giving effect to the "miscarriage of justice" standard of MCL 769.26, a

---

obligated to "instruct the jury as to the law applicable to the case". MCL 768.29. While reading the applicable statute to the jury may well be instructing the jury as to the law applicable to the case in most circumstances, it was not here because the statute contained a term of art jurors are not presumed to understand, i.e., a jury would not understand from a reading of the statute that the existence of factual causation alone would be insufficient to support a guilty verdict.

[69] MCL 769.26; *People v Young*, 472 Mich 130, 141-142; 693 NW2d 801 (2005).

[70] MCL 769.26 (emphasis added).

[71] 466 Mich 335; 646 NW2d 127 (2002).

reviewing court is required to classify the type of alleged instructional error as either constitutional or nonconstitutional, and as either preserved or unpreserved.[72] In *Cornell*, we held that instructional error based on the misapplication of a statute is generally considered nonconstitutional error.[73] As such, any error that the trial court committed in the present case in failing to explain the causation element of § 625(4) was nonconstitutional. Moreover, because defendant promptly objected to the instruction and adequately articulated the basis for the objection, the alleged error was properly preserved.

Accordingly, the alleged instructional error in this case is appropriately classified as preserved, nonconstitutional error, as noted by the Court of Appeals. In *People v Lukity*,[74] we held that MCL 769.26 creates a presumption that preserved nonconstitutional error is harmless unless the defendant demonstrates that the error

---

[72] *Id*. at 362-363, citing *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). Constitutional errors must further be classified as either structural or nonstructural. *Cornell*, *supra* at 363.

[73] *Id*. at 364-365; see also *People v Rodriguez*, 463 Mich 466, 473-474; 620 NW2d 13 (2000).

[74] 460 Mich 484; 596 NW2d 607 (1999).

was outcome determinative.[75]  Specifically, in *Lukity* we stated that MCL 769.26 "presumes that a preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative."[76]  An error is not "outcome determinative" unless it "'undermined the reliability of the verdict.'"[77]

Applying the *Lukity* standard to the alleged instructional error in the present case, we conclude that any error on the part of the trial court in merely reading the statute and failing to explain the causation element of OUIL causing death was harmless.  There is no evidence that the trial court's failure to explain fully both the factual cause and proximate cause components of the causation element of the offense was "outcome determinative" or that the "reliability of the verdict was undermined."

---

[75] *Id*. at 495–496.

[76] *Id*. (citation omitted).

[77] *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001), quoting *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000).  Recent cases where we found that instructional error required reversal include *People v Mass,* 464 Mich 615; 628 NW2d 540 (2001), *People v Duncan*, 462 Mich 47; 610 NW2d 551 (2000), and *People v Rodriguez, supra.*

31

Assuming, arguendo, that the jury gave full credit to the testimony of defendant's expert witness on highway design, the most that the witness's testimony established was that the freeway exit was negligently designed. The witness presented no evidence that there was any *gross* negligence in the design of the freeway exit. As such, the design of the freeway exit could not be considered a superseding cause that would prevent defendant from being legally regarded as a proximate cause of the victim's death. We conclude, therefore, that defendant has failed to rebut the presumption that the alleged instructional error was harmless because he has not demonstrated that the alleged error was outcome determinative in that it undermined the reliability of the verdict, as required by MCL 769.26 and *Lukity*.[78]

Defendant also argues that the trial court committed error requiring reversal when it reminded the jury three times during instructions about defendant's stipulation as to his 0.16 blood-alcohol level.[79] However, the Court of

---

[78] As noted earlier, defendant's expert witness admitted at trial that his defective design theory was inconsistent with the actual history of accidents associated with the exit ramp.

[79] Schaefer brief at 26 ("the judge reminded the jurors that the parties stipulated that the Defendant's blood alcohol

32

Appeals declined to address this argument in light of its resolution of this case. Accordingly, we remand this case to the Court of Appeals limited solely to the issue of whether the trial court committed error requiring reversal in making repeated references to the stipulation regarding defendant's blood-alcohol level.[80] We do not retain jurisdiction.[81]

---

level was 0.16. The reminder of the stipulation is used three times in this instruction . . . .").

[80] Justice Cavanagh's ex post facto and due process concerns are misplaced. As the United States Supreme Court has held, "The *Ex Post Facto* Clause, by its own terms, does not apply to courts. Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text." *Rogers v Tennessee*, 532 US 451, 460; 121 S Ct 1693; 149 L Ed 2d 697 (2001). Although it is true, as Justice Cavanagh indicates, that prior precedent from the United States Supreme Court and this Court has held that there are due process limitations on the retroactive application of judicial interpretations of criminal statutes that are "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," *Post* at 6, we believe that it is not "indefensible or unexpected" that a court would, as we do today, overrule a case that failed to abide by the express terms of a statute.

[81] Because we conclude that the trial court's other instructional errors were harmless, the Court of Appeals is to consider on remand only whether the trial court's multiple references to the stipulation constituted error requiring reversal—i.e., that a "miscarriage of justice" occurred, as required by MCL 769.26 and *Lukity*. If the Court of Appeals determines that no "miscarriage of justice" occurred, defendant's conviction of OUIL causing death is to be affirmed.

33

## ii.   People v Large

The first two elements of OUIL causing death are not in dispute.  Defendant's blood-alcohol level was 0.10 grams and he voluntarily chose to drive knowing that he had consumed alcohol.  The uncertainty lies in the causation element of the offense.

Defendant's operation of the vehicle was undeniably a factual cause of the young girl's death.  Absent defendant's operation of the vehicle, the collision would not have occurred.  The issue of proximate causation, however, is less certain.  There is evidence that the victim's death was the direct and natural result of defendant's operation of the vehicle.  At the same time, the victim rode a bicycle without brakes down a partially obstructed hill onto a busy road and, thus, according to the prosecution's own expert witness, made the collision unavoidable.  Given the fact that during the preliminary examination the parties did not directly address the proximate cause issue, including whether the victim's own behavior was a superseding cause, the proper course is to remand this case to the district court for reconsideration of whether to bind over defendant in light of the principles discussed in this opinion.  We do not retain jurisdiction.

## IV. CONCLUSION

The *Lardie* Court erred in holding that the defendant's "intoxicated driving" must be a substantial cause of the victim's death. There is no textual basis for the *Lardie* Court's holding. Indeed, the plain text of the OUIL causing death statute requires no causal link at all between the defendant's intoxication and the victim's death. The defendant's status as "intoxicated" is a separate element of the offense and entirely irrelevant to the causation element of the crime. It is the defendant's *operation* of the motor vehicle that must cause the victim's death under § 625(4), not the manner by which the defendant's intoxication may or may not have affected the defendant's operating ability. Therefore, to the extent that *Lardie* held that § 625(4) requires the defendant's intoxicated driving to be a substantial cause of the victim's death, it is overruled. In proving the causation element of OUIL causing death, the people need only prove that the defendant's *operation* of the motor vehicle caused, both factually and proximately, the victim's death.

Accordingly, in *People v Schaefer*, the judgment of the Court of Appeals is vacated and the case is remanded to the Court of Appeals to address defendant's remaining argument that the trial court erred so as to require reversal in

35

making repeated references to defendant's stipulation as to his 0.16 blood-alcohol level during the jury instructions. In *People v Large*, the judgment of the Court of Appeals is reversed and the case is remanded to the district court for reconsideration of whether to bind defendant over on the charge of OUIL causing death in light of the principles set forth in this opinion. We do not retain jurisdiction in either case.

Robert P. Young, Jr.
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

36

STATE OF MICHIGAN

SUPREME COURT


PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                    No. 126067

DAVID WILLIAM SCHAEFER,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                    No. 127142

JAMES RICHARD LARGE,

    Defendant-Appellee.

_____

WEAVER, J. *(concurring).*

    I join in the majority's holding, analysis, and application in these cases. As the majority concludes—and as I urged in my separate concurrence in *People v Lardie,* 452 Mich 231, 267; 551 NW2d 656 (1996)—a proper reading of the statute prohibiting OUIL causing death is that it criminalizes a death caused by a person operating a car while intoxicated, regardless of the manner of operation.

I write separately to note that the same careful consideration of the OUIL statutory text that results in the above conclusion demands I reconsider another point I made in my *Lardie* concurrence.

Specifically, I suggested in *Lardie* that showing proximate cause was not necessary to prove OUIL causing death. *Lardie, supra* at 268 n 5, 273 n 11. However, now that the issue is squarely before the Court, and I have reexamined the language of the statute in the two cases before us, I now agree that the Legislature's use of the term "causes the death" indicates that the common-law meaning of "cause" must be used, and both cause in fact and proximate cause need to be shown.

The dangers of driving under the influence are no doubt of concern to the Legislature; however, as the majority indicates, had the Legislature wanted to remove a showing of proximate cause from the statute prohibiting OUIL causing death, it could have used the term "resulting in the death" instead.

Elizabeth A. Weaver

2

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                       No. 126067

DAVID WILLIAM SCHAEFER,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                         No. 127142

JAMES RICHARD LARGE,

    Defendant-Appellee.

_____

CORRIGAN, J. (*concurring*).

I concur in and join every aspect of the majority opinion. I write separately to suggest an analytic approach to the sole remaining issue to be resolved on remand in *People v Schaefer*, i.e., whether the trial court committed error requiring reversal when it reminded the jury three times during instructions about defendant's stipulation regarding his blood-alcohol level of 0.16 grams.

As the majority correctly observes, *ante* at 33 n 81, in determining whether the multiple references to the stipulation constitute an error requiring reversal, the Court of Appeals should consider whether defendant has established that a "miscarriage of justice" occurred, as required by MCL 769.26 and *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999).

In assessing whether a miscarriage of justice occurred, I believe it is noteworthy that defendant is mistaken in assuming that his blood-alcohol level at the time of the accident is the sole factor that the jury was entitled to consider in finding that he was intoxicated. MCL 257.625(1) clearly provides two independent bases on which the jury could have concluded that defendant was intoxicated. Specifically, at the time defendant was charged, § 625(1) provided that a defendant is considered intoxicated for the purpose of OUIL causing death if *either* of the following applies:

> (a) The person is under the influence of intoxicating liquor, a controlled substance, or a combination of intoxicating liquor and a controlled substance.

> (b) The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine.

Thus, pursuant to § 625(1), the jury could have found that defendant was intoxicated *either* on the basis of evidence of defendant's blood-alcohol level, *or* on the basis of evidence presented at trial demonstrating that defendant was "under the influence of intoxicating liquor."

In instructing the jury, the trial court repeatedly informed the jury of these two alternative bases:

> *The Court*: So, the elements are *either* operating under the influence, that's one. *Or,* operating a motor vehicle while the blood alcohol content is 0.10.
>
>         *      *      *
>
> It's *either* driving under the influence, *or* driving with a blood alcohol content of 0.10. And as a result of so operating a motor vehicle, causes the death of another person.
>
> Those are the elements of Count 1 [OUIL causing death]. . . .
>
>         *      *      *
>
> So, if you find in Count 1 [OUIL causing death] that the defendant operated a motor vehicle under the influence of intoxicants, *or* that he at the time had a blood alcohol level in excess of .10. And that as a result of that, a person was killed. That is what you call homicide caused by driving under the influence. [Emphasis added.]

3

Moreover, the trial court explicitly instructed the jury that it was free to reject defendant's stipulation about his blood-alcohol level. Specifically, the trial court told the jury, "You have a right to accept [the stipulation], or you have a right to reject it. It's entirely up to you." It is thus quite possible that the jury chose to ignore completely defendant's stipulation about his blood-alcohol level when it found defendant guilty of OUIL causing death.[1]

---

[1] The prosecution presented various evidence at trial to demonstrate that defendant was "under the influence of intoxicating liquor," pursuant to § 625(1)(a). First, defendant himself admitted that he consumed at least three beers before getting behind the wheel. Defendant also admitted that his blood-alcohol level was 0.16 grams less than three hours after the accident and that he did not consume any alcoholic beverages between the time of the accident and when his blood was later drawn at the hospital. The accident occurred about 10:08 pm, and defendant's blood was drawn at the hospital about 12:56 am. The victim, defendant's passenger, had a blood-alcohol level of 0.35 grams approximately forty minutes after the accident occurred. Three hours after the accident, the victim's blood-alcohol level had *declined* to 0.24 grams.

Second, several eyewitnesses told the police that defendant was tailgating various cars on the freeway, driving erratically, and swerved suddenly to get off the highway. Evidence was presented at trial that defendant followed a car on the freeway for one mile with less than one-half of a car length between the vehicles and while traveling at a speed of sixty-five miles an hour. Defendant acknowledged that the other two lanes of the freeway were clear for the entire mile that he was tailgating. Defendant then proceeded to tailgate a tractor-trailer in a similar manner.

4

Accordingly, in addressing on remand whether the trial court committed error requiring reversal in making repeated references to the stipulation, the Court of Appeals should consider the alternative bases provided by § 625(1)(a) and (b) and the trial court's instruction that the jury was entitled to disregard the stipulation.

Maura D. Corrigan

---

Third, when the police investigated the crime scene, officers found numerous empty bottles of alcohol in defendant's vehicle. In addition to the empty bottles of beer, the police also found an empty vodka bottle in defendant's vehicle. Defendant denied drinking any vodka on the night of the accident.

Fourth, the nature of the accident itself was described in great detail at trial. Defendant suddenly swerved to get off the freeway and his vehicle rolled over. In the prior twenty years, there had been no rollover accidents on that same freeway exit.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                             No. 126067

DAVID WILLIAM SCHAEFER,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                             No. 127142

JAMES RICHARD LARGE,

    Defendant-Appellee.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I concur in the result reached by the majority that, to convict a defendant of OUIL causing death under MCL 257.625(4), the prosecution must prove that the defendant was intoxicated and that his or her driving was both the factual and the proximate cause of the victim's death. Like Justice Weaver, I have carefully reexamined the language of the statute and this Court's interpretation of that language in *People v Lardie*, 452 Mich 231; 551 NW2d 656 (1996). In doing so, I have come to the conclusion

that the *Lardie* Court's interpretation of the statute did not effectuate the intent of the Legislature. As Justice Weaver noted in her *Lardie* concurrence, the *Lardie* majority's conclusion that the focus must be on the defendant's "intoxicated driving" imposed an unworkable burden on the prosecution. *Lardie*, *supra* at 272 (Weaver, J., concurring). After due consideration, I now believe that the correct interpretation of the statute is that set forth by the current majority.

I would also suggest that the *Lardie* majority's conclusion that the defendant's driving must be a "substantial" cause of the victim's death, while inartfully worded, was likely an attempt to accentuate that the concept of proximate cause in a criminal context is a more demanding standard than that found in tort law. *People v Barnes*, 182 Mich 179, 196-199; 148 NW 400 (1914); LaFave & Scott, Criminal Law (2d ed), § 3.12, pp 279, 282. This is true "because the potential deprivation of personal rights is obviously much more extreme in criminal, as opposed to tort, actions." *People v Harding*, 443 Mich 693, 738; 506 NW2d 482 (1993) (Cavanagh, J., concurring in part and dissenting in part). Thus, in a criminal context, "[t]he proximate cause standard requires a sufficient causal connection between the defendant's conduct and the result

2

of that conduct. '[I]t [must] appear[] that the death resulted as the natural, direct, and necessary result of the unlawful act . . . .'" *Id.* at 737, quoting *Barnes*, *supra* at 196.

As our criminal jury instructions suggest, "the criminal standard for proximate cause requires a more direct causal connection than the tort concept of proximate cause." *Harding, supra* at 738. Thus, in establishing causation under MCL 257.625(4), it is critical to note the following caveats:

> [C]riminal liability requires a more direct causal connection than merely finding that the defendant's actions were "a" cause. Where there are multiple independent causes contributing to the victim's injury or death, so that the defendant's conduct alone would not have caused the death, we would not impose liability for criminal negligence unless the defendant's conduct sufficiently dominated the other contributing factors, to be fairly deemed a criminal proximate cause, and the injury was reasonably foreseeable from the defendant's negligence. More specifically, even though a victim's contributory negligence is not an affirmative defense, it is a factor to be considered by the trier of fact in determining whether the prima facie element of proximate cause has been proven beyond a reasonable doubt. [*People v Tims*, 449 Mich 83, 111; 534 NW2d 675 (1995) (Cavanagh, J., dissenting).]

Thus, the *Lardie* Court's underlying premise, that proximate cause should be examined differently in a

3

criminal case, was correct, but the current majority's approach more accurately conveys the concept.

I dissent, however, from the majority's decision to remand these cases for further proceedings under the rule set forth in today's opinion because I believe that applying the new rule, which overturns our prior interpretation of MCL 257.625(4), violates due process and infringes on the protections inherent in the Ex Post Facto Clauses of the United States and Michigan constitutions. US Const 1963, art I, § 10; Const, art 1, § 10.[1]

In *People v Dempster*, 396 Mich 700; 242 NW2d 381 (1976), this Court recognized the longstanding rule that to avoid a deprivation of due process, "[a] criminal statute must be 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them

---

[1] Although the Ex Post Facto Clauses do not directly apply to the judiciary, *People v Doyle*, 451 Mich 93, 99; 545 NW2d 627 (1996), citing *Marks v United States*, 430 US 188; 97 S Ct 990; 51 L Ed 2d 260 (1977), the "principles are applicable to the judiciary by analogy through the Due Process Clauses of the Fifth and Fourteenth Amendments." *Doyle, supra* at 100, citing *Bouie v City of Columbia*, 378 US 347; 84 S Ct 1697; 12 L Ed 2d 894 (1964); see also *People v Stevenson*, 416 Mich 383, 395; 331 NW2d 143 (1982); *People v Dempster*, 396 Mich 700, 714-718; 242 NW2d 381 (1976). For the purposes of my analysis, I consider the concepts inextricably intertwined. When a defendant is deprived of due process, and, thus, is subjected to a punishment not available at the time of his or her conduct, this treatment is precisely what is contemplated, and prohibited, under ex post facto principles.

liable to its penalties'." *Id.* at 715, quoting *Connally v Gen Constr Co*, 269 US 385, 391; 46 S Ct 126; 70 L Ed 322 (1926). In *Lardie*, this Court examined MCL 257.625(4) in great detail in an attempt to clarify its meaning. We engaged in extensive endeavors of statutory construction to determine things that were not evident on the statute's face. In particular, we examined whether the statute was meant to impose strict liability; if it was not, whether it created a general or specific intent crime; whether the Legislature intended that the prosecution prove some type of fault; and what the parameters of the statute's causation requirement were.

The resulting judicial interpretation of the statute had, of course, the force of law, and sufficiently explained to the citizenry what type of conduct on their part would lead to criminal culpability. Through that decision, the people of this state were given "fair warning" of a prohibited type of conduct. As the United States Supreme Court has explained, "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie, supra* at 352.

Our decision in *Lardie*, which had the support of six justices, was the settled state of the law at the relevant time of these defendants' conduct. Due process precludes "retroactive application of a 'judicial construction of a criminal statute [that] is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue . . . .""" *Doyle*, *supra* at 101, quoting *Bouie*, *supra* at 354, quoting Hall, *General Principles of Criminal Law* (2d ed), p 61. There was nothing in *Lardie* that suggested that the law was in some state of flux or that this Court's construction of the statute was less than clear or complete. No fair reading of *Lardie* would alert a person that *Lardie* would later be revisited or revised. Thus, at the time of these defendants' conduct, any construction different than that set forth in *Lardie* was both unexpected and indefensible.

The majority's assertion that "it is not 'indefensible or unexpected' that a court would, as we do today, overrule a case that failed to abide by the express terms of a statute," completely eliminates the protections against ex post facto punishments and due process violations. See *ante* at 33 n 80. Under the majority's reasoning, no new court opinion would ever be "indefensible or unexpected," because the new opinion would always be "correct." But

6

this ignores the fact that *every* court believes an opinion it issues is correct, just as the *Lardie* Court believed in 1996, or it would not issue the opinion.

Further, the majority's reasoning imposes on our citizenry the untenable burden of guessing and predicting when one court might overturn a prior court's settled interpretation of a statute. I find such a result in grave conflict with the notions of due process and, thus, fatally flawed.

As such, I disagree that these defendants must again undergo the criminal process under our new interpretation of what was, at the relevant time, settled law. Such a ruling violates the fundamental principles of due process and subjects defendants to ex post facto punishment. While the prosecution had a more difficult burden under *Lardie*, today's decision lessens that burden, making our new interpretation an unforeseeable judicial expansion of a criminal statute. Subjecting defendants to a new rule that increases the chance of culpability, when their conduct was committed when the old rule was settled law, is a clear violation of defendants' constitutional rights.

Accordingly, I would affirm the district court's dismissal of defendant Large's case because the district court found that, under *Lardie*, probable cause that

defendant committed a crime was nonexistent.  The district court did not abuse its discretion in finding so.  I would, though, remand defendant Schaefer's case for a new trial.  On remand, I would instruct the trial court to give the jury instruction to which defendant Schaefer was entitled at his original trial.

Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                           No. 126067

DAVID WILLIAM SCHAEFER,

    Defendant-Appellee

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                           No. 127142

JAMES RICHARD LARGE,

    Defendant-Appellee

_____

KELLY, J. (*concurring in part and dissenting in part*).

I concur with the majority's interpretation of MCL 257.625(4). I write separately to note that I too have reexamined the language of MCL 257.625(4) and past readings of it. I continue to believe that the opinion of this Court in *People v Lardie*[1] and that of the Court of Appeals

---

[1] 452 Mich 231; 551 NW2d 656 (1996).

on which I sat[2] were both correct in ruling that the statute is constitutional.

The defendant in *Lardie* had contended and the trial court had found that the statute creates an unconstitutional strict liability, public welfare offense. Both appellate courts disagreed that the statute is unconstitutional. I now believe that the statute does not impose strict liability on the intoxicated driver, as the Court of Appeals ruled. Nor does it require the prosecutor to prove that the intoxication caused the injury, as this Court ruled.

*Lardie* presented a different issue than the issue in these cases; it concerned intent. Causation was not the focus in *Lardie*, but it is here. The question here is what causal link between defendant's actions and the death does the statute require that the prosecutor show. After thorough consideration, I conclude that the correct interpretation of MCL 257.625(4) is that the prosecutor must prove (1) the defendant was intoxicated and (2) the defendant's driving was the factual and proximate cause of the victim's death.

I agree with Justice Cavanagh that the majority errs in remanding *People v Large* for further proceedings under

---

[2] 207 Mich App 615; 525 NW2d 504 (1994).

2

the new rule set forth in its decision.  Doing so violates fundamental notions of fairness that are embedded in the Due Process Clause of the federal and state constitutions. US Const, Am V; Am XIV, § 1; Const 1963, art 1, § 17.

Marilyn Kelly