**UNITED STATES of America**

v.

**Anthony SCIARRINO Appellant.**

**No. 89–5243.**

United States Court of Appeals, Third Circuit.

Argued July 24, 1989.

Decided Sept. 1, 1989.

Timothy J. O'Connell [argued], Turner & O'Connell, Harrisburg, Pa., for appellant.

---

James J. West, U.S. Atty., William A. Behe [argued], Asst. U.S. Atty., U.S. Attorney's Office, Harrisburg, Pa., for appellee.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge and WOLIN, District Judge *.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Anthony Sciarrino appeals from a judgment of sentence imposed following a guilty plea to charges of conspiracy to distribute marijuana, 21 U.S.C. § 846, and possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). The offenses occurred after November 1, 1987. Thus, under the sentencing guidelines, calculation of offense conduct involved a determination of the amount of marijuana involved in the offenses. The district court determined that Sciarrino distributed or was involved with distribution of 2,094 pounds of that substance. He was sentenced to two concurrent terms of 97 months imprisonment to be followed by four years of supervised release. Sciarrino contends that the district court erred in calculating his guideline sentence.

### A.

Presenting a question of first impression in this court, Sciarrino contends that the district court erred in relying on hearsay evidence in determining the amount of marijuana involved, and thus in determining the appropriate offense conduct under § 2D1.1 et seq. of the sentencing guidelines.

The indictment to which Sciarrino pleaded guilty charged him and co-conspirators Nicholas John Dulak and Steven L. "Wally" Gladfelter with conspiracy and possession with intent to distribute in excess of 1,000 kilograms of marijuana. Sciarrino challenged the amount involved, and an evidentiary hearing was held on that issue.

The government presented evidence depicting Sciarrino as a mid-level distributor who obtained marijuana from a government witness, Billie Skinner, and passed it on to Dulak, Gladfelter, and unindicted co-conspirators Timothy O'Donnell and Robert Lee. All of these persons testified about amounts of marijuana but it is the testimony of Dulak with which Sciarrino is concerned.

Testifying for the government pursuant to a plea bargain, Dulak stated that he received no more than 800 pounds in all from Sciarrino. This was inconsistent with Lee's testimony that Lee alone received 800 pounds from Dulak, and Dulak's testimony that Lee was not his only customer. The government then brought out Dulak's prior inconsistent statement to Special Agent Keith Miller of the Drug Enforcement Administration that Dulak had purchased from Sciarrino 1,400 pounds of marijuana.

Sometime after the hearing, Dulak underwent a polygraph examination with respect to the amount of marijuana he procured from Sciarrino. He failed that test, and subsequently stated that he could have sold 1,200 to 1,400 pounds for Sciarrino. Neither Sciarrino nor his counsel were notified of the polygraph examination, given copies of the results, or permitted to examine the person who conducted it. At the sentencing they objected to it. The district court stated expressly that it did not consider the polygraph.[1]

■ In calculating the amount of marijuana involved, the district court discredited Dulak's testimony that he obtained only 800 pounds of marijuana from Sciarrino, but credited Dulak's prior statement to Special Agent Miller that the amount was 1,400 pounds. Thus the district court relied on Dulak's prior inconsistent statement not for impeachment purposes, as permitted by Fed.R.Evid. 613(b), but for the truth of the matter asserted. The court's reliance on this hearsay statement to establish the amount of marijuana is unequivocal.

---

* Hon. Alfred M. Wolin, United States District Judge for the District of New Jersey, sitting by designation.

1. Sciarrino raises the polygraph issue on appeal, but it is obviously a non-issue since the district court placed no reliance on it.

Sciarrino urges that the Sentencing Reform Act of 1984, as implemented by the sentencing guidelines requiring determinations of fact with respect to offense, offender and victim characteristics after a hearing, should be read as precluding use at such a hearing of hearsay to establish those facts. Otherwise, he contends, the sentencing scheme would violate due process of law.

Sciarrino can take no comfort in the Sentencing Reform Act. That statute merely renumbered former section 3577 of Title 18, carrying forward the identical language:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Pub.L. No. 98–473, Title II, c. II, § 212(a)(1), 98 Stat.1987 (Oct. 12, 1984), 18 U.S.C. § 3661. Under the pre–1987 sentencing statute the use of hearsay in the sentencing stage of a criminal proceeding was permissible. *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980); *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Baylin*, 696 F.2d 1030, 1039 (3d Cir.1982). The state courts may do likewise without violating due process. *Williams v. Oklahoma*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

Sciarrino contends that the *Roberts–Williams* authorities should be deemed inapplicable to guidelines sentencing because the Sentencing Guidelines circumscribe the sentencing judges' discretion. It is true that the guidelines sentencing limits the exercise of judicial discretion, but it does not follow that due process requires a different rule with respect to hearsay. Whether the sentence is one chosen by the court or one within the range mandated by the Sentencing Commission, the consequence for the defendant of the court relying upon hearsay evidence is exactly the same. In both cases hearsay admitted for the truth of the matter asserted is used in making the determination of an appropriate sentence. The hearsay relied upon is no more nor less reliable in either case. As a matter of due process, therefore, the enactment of the Sentencing Reform Act of 1984 requires no different rules with respect to what evidence may be used in determining a sentence than were already in place.

This is not to say that a court may in sentencing rely on "misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); *Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). In this instance, that did not occur. The defendant was confronted with Dulak's prior inconsistent statement and was free to offer evidence disputing it. The statement had sufficient indicia of reliability for use for impeachment purposes even at trial. Fed. R.Evid. 613(b). There were other corroborating circumstances. Thus while we can envision circumstances in which evidence relied on at sentencing is so totally untrustworthy as to violate the *Townsend v. Burke* due process rule, this case clearly does not present such circumstances.

Thus we reject Sciarrino's contention that the district courts may never rely in a sentencing hearing on hearsay evidence for the truth of the matter asserted.

## B.

■ Alternatively Sciarrino contends that the district court's 2,094 pound finding is not supported by the evidence. In making that finding the district court applied a beyond-a-reasonable-doubt standard of proof, rejecting the government's contention that a preponderance-of-the-evidence standard should apply. *See Jones v. Thieret*, 846 F.2d 457, 461 (7th Cir.1988).

Sciarrino contends that Billie Skinner's testimony was so incredible with respect to a 450 pound transaction that it should not have been credited. Assuming without deciding that the beyond-a-reasonable-doubt standard governs, it does not affect our

scope of review of the trial court findings of fact. Issues of credibility are reserved for the district court.

Sciarrino also contends that the district court counted the 330 pounds twice. We need not explore the details of the calculation, however, because the 330 pound difference would not change the applicable offense level. Under Sentencing Guidelines § 2D1.1(a)(3), trafficking from 700 to 999 kilograms of marijuana results in an offense level of 30. A reduction of 330 pounds would produce a total of 1,764 pounds, or 800.2 kilograms; well within the same category.

## C.

The use of hearsay in making findings for purposes of guidelines sentencing violates neither the Sentencing Reform Act of 1984 nor due process. There is no material error in the court's application of the guidelines. The judgment of sentence will therefore be affirmed.