**UNITED STATES of America**

v.

**James RIDER, Appellant.**

**No. 07–2339.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 17, 2008.

Filed: April 18, 2008.

---

**3.** Casey raised arguments in the District Court that he has not raised on appeal. Those arguments, therefore, are waived. Even if they were not, we would reject them for the reasons explained by the District Court. We do not address arguments and assertions contained in Casey's brief that are not relevant to the narrow issue presented on appeal.

208

Martin C. Carlson, Office of United States Attorney, Harrisburg, PA, for United States of America.

Royce L. Morris, Joseph M. Sembrot, Goldberg, Katzman & Shipman, Harrisburg, PA, for Appellant.

Before: SLOVITER, JORDAN, and ALARCÓN,* Circuit Judges.

## OPINION OF THE COURT

ALARCÓN, Circuit Judge.

James Rider entered a plea of guilty for violating 18 U.S.C. §§ 371 and 1952. The District Court sentenced him to 120 months of imprisonment and ordered him to pay restitution. Rider appeals from the District Court's sentencing decision on two grounds. He contends that the District Court erred in calculating the weight of the methamphetamine that it attributed to him. He also maintains that the District Court erred in ordering him to pay for the expenses incurred in the funeral of the person who overdosed on the methamphetamine allegedly provided by Rider. We affirm the District Court's sentence because it did not clearly err in finding that Rider was involved in a drug conspiracy which transported between 500 grams and 1.5 kilograms of methamphetamine. The District Court also did not abuse its discretion in ordering Rider to pay restitution under 18 U.S.C. § 3663A(b)(3).

## I

## A

On December 4, 2006, Rider pled guilty, pursuant to a plea agreement, to conspiracy to interstate travel in aid of the distribution of methamphetamine allegedly resulting in death, in violation of 18 U.S.C. § 1952 and 18 U.S.C. § 371, and interstate travel in the aid of distribution of methamphetamine allegedly resulting in death, in violation of 18 U.S.C. § 1952(a)(3).[1] These charges related to conduct from 2004 to 2006 during which Rider and his associates transported methamphetamine between North Carolina and Pennsylvania. Rider also pled guilty to the charge that, on September 25, 2004, his distribution of methamphetamine lead to the fatal drug overdose of twenty-year old Jason Yoder.[2]

---

* The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. On September 21, 2005, the Government indicted Rider for intentionally and knowingly distributing methamphetamine which caused the death of another person, in violation of 18 U.S.C. § 841(a)(1), (b)(1)(c), and 18 U.S.C. § 2. Rider waived prosecution by indictment and consented to the filing of an information. On December 4, 2006, the Government filed a superceding information alleging the two counts to which Rider pled guilty pursuant to the plea agreement.

2. As part of the plea agreement, Rider agreed that "the United States Sentencing Commission Guidelines which took effect on November 1, 1987, as amended and interpreted by *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), will apply to the offenses to which the defendant is pleading guilty."

Following the entry of Rider's guilty plea, the probation office prepared a presentence investigation report ("PSR"). In the PSR, the probation office reported that Rider and his co-conspirator transported between 500 grams and 1.5 kilograms of methamphetamine. The probation office also determined that Rider's criminal history category was a six (VI) based on Rider's fifteen prior criminal convictions. In recommending that there be no adjustment for acceptance of responsibility, the PSR noted that Rider had "not acknowledged any responsibility for Yoder's death."

Based on these determinations, the PSR set forth a base offense level of 32. This resulted in a sentencing guideline imprisonment range of 210–262 months. However, the probation office concluded that "the maximum term of imprisonment on each of Counts 1 and 2 is five years." (citing 18 U.S.C. § 371, 18 U.S.C. § 1952(a)(3)). The probation office determined that the sentence should be 120 months "because the aggregate statutory maximum penalty is ten years." (citing U.S.S.G. § 5G1.1(a)).[3]

The PSR also provided that if the sentencing court found Rider to be the cause of Yoder's death, "[i]n accordance with provisions of 18 USC § 3663(a)[4] and 3664(f)(1)(A)[5], the Court shall order that the defendant make full restitution" in the amount of $6,963 to Yoder's family for funeral expenses.

Rider objected to the PSR's findings regarding the amount of drugs the PSR attributed to him. He argued that on the night of Yoder's death, Rider had no more than one-fourth ounce (approximately 7.08 grams) of methamphetamine in his possession. This amount would justify a total offense level of 16 resulting in a sentence range of 46–57 months. Rider also challenged his criminal history category and maintained that it should be lowered from a category six (VI) to five (V) because the majority of his prior convictions were "minor incidents."

## B

On April 27, 2007, the District Court conducted a sentencing hearing. At the hearing, John Langan, an agent with the Drug Enforcement Administration, testified for the Government. Agent Langan testified that he spoke to Chad McCaffrey, an individual associated with Rider and Miguel Pedia, Rider's co-conspirator. McCaffrey admitted to Agent Langan that he, along with Rider, had transported several pounds, or between 1 and 1.5 kilograms, of methamphetamine between North Carolina and Pennsylvania in one single trip.

Scott Mauery, a detective with the Mifflin County Regional Police Department in Lewistown, Pennsylvania, testified that he interviewed six witnesses who were the individuals who made-up the party during which Yoder overdosed. Detective Mauery testified that the witnesses reported that Rider produced at the party a gallon size Ziploc bag containing between

---

3. U.S.S.G. § 5G1.1(a) provides: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."

4. 18 U.S.C. § 3663(a) provides, in relevant part: "The court, when sentencing a defendant convicted of an offense under this title

... may order ... that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate."

5. 18 U.S.C. § 3664(f)(1)(A) provides: "In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."

one-quarter and one-half pound of methamphetamine. Detective Mauery also testified that Yoder died of what was later determined to be a drug overdose following his use of the methamphetamine provided by Rider.

Rider testified on his own behalf. He admitted that he traveled with Pedia between Pennsylvania and North Carolina to transport methamphetamine which was concealed in "five-gallon buckets" of drywall compound. He also stated that he did not know how much methamphetamine was inside the buckets. He also testified that he was not "bringing drugs into Pennsylvania himself," nor distributing or delivering them, but rather that he traveled with Pedia because they "were friends." Rider also asserted that on twenty separate occasions he shared a "couple [of] grams" of methamphetamine with Pedia.

Rider also admitted during his testimony that, on September 25, 2004, he provided the methamphetamine to the participants at the party during which Yoder overdosed. He further testified that he did not intend to give any of the drugs to Yoder. He stated Yoder took the methamphetamine without his knowledge or consent. Rider also testified that he only provided one-quarter of an ounce of methamphetamine to the party participants.

Following argument of counsel, the District Court made the following findings:

[I]t's my opinion that Rider did understate the amount of methamphetamine that he took to this party [where Yoder overdosed]. He did plead guilty to conspiracy, and I can consider all of the hearsay testimony. And so I feel that at this point that I have to accept the Government's argument and deny [Rider's] objection on weight.

The District Court concluded that Rider participated in a conspiracy which transported between 500 grams and 1.5 kilograms of methamphetamine. The District Court credited Rider with acceptance of responsibility.

Based on these findings, the District Court calculated a sentencing guideline range of 151 to 188 months of imprisonment. Since this range exceeded the five-year statutory maximum sentence for each count, the District Court sentenced Rider "to be imprisoned for a term of 120 months." The District Court explained that this sentence "consists of terms of 60 months on each of Counts 1 and 2 to be served consecutively."

The District Court also determined that Rider's distribution of the methamphetamine resulted in Yoder's death. The District Court ordered Rider to make restitution to Yoder's family for the cost of his burial.

The District Court declined to rule on Rider's argument that his criminal history category should be reduced to a category five (V). The District Court reasoned that, even with a criminal history category five (V), the sentencing guidelines range would still exceed ten years, which would result in a 120 month sentence. The District Court concluded it would be "moot" to rule on the issue because the same sentence would be imposed regardless of Rider's criminal history category. Defense counsel agreed.

Rider filed a timely notice of appeal of his sentence. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

Rider contends that the Government presented unreliable and insufficient evidence at the sentencing hearing to justify the District Court's sentencing decision. He maintains that the District Court erred in relying on this evidence to find that he

participated in a drug conspiracy which distributed at least 500 grams, a little over one pound, of methamphetamine. Rider argues that the District Court "consulted an erroneous sentencing guideline range" in its sentencing decision.

"We review factual findings, including drug quantity determinations, for clear error." *United States v. Gibbs,* 190 F.3d 188, 203 (3d Cir.1999). The District Court's determination must be supported by "a preponderance of the evidence." *Id.; see also United States v. Grier,* 475 F.3d 556, 561 (3d Cir.2007) (en banc) (explaining that "[u]nder an advisory Guidelines scheme, district courts should continue to make factual findings by a preponderance of the evidence and courts of appeals should continue to review those findings for clear error.") (citing *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)).

The evidence used as a basis for sentencing must have " 'sufficient indicia of reliability to support its probable accuracy.' " *United States v. Miele,* 989 F.2d 659, 663 (3d Cir.1993) (citation omitted). A sentencing court may rely on hearsay evidence for the truth of the matter asserted in determining the amount of drugs involved in an offense, so long as it has sufficient indicia of reliability. *United States v. Sciarrino,* 884 F.2d 95, 96–98 (3d Cir.1989). "We recognize that in calculating the amounts involved in drug transactions, some degree of estimation must be permitted.... This is not to say that calculations of drug amounts may be based on mere speculation, however." *United States v. Collado,* 975 F.2d 985, 998 (3d Cir.1992); *see also* U.S.S.G. § 2D1.1, Application Note 12 ("Where there is no drug seizure ... the court shall approximate the quantity of the controlled substance."). "[W]hether a particular defendant may be held accountable for amounts of drugs involved in transactions conducted by a co-conspirator depends upon the degree of the defendant's involvement in the conspiracy and, of course, reasonable foreseeability with respect to the conduct of others within the conspiracy." *Collado,* 975 F.2d at 992.

Here, there is no dispute that Rider pled guilty to conspiring with others in the aid of distributing methamphetamine resulting in death. Rider challenges the District Court's finding as to the amount of the methamphetamine that was distributed.

■ The evidence presented at the sentencing hearing supports the District Court's finding that Rider, as part of the drug conspiracy, transported at least 500 grams of methamphetamine. Agent Langan testified that Pedia and Rider transported between 1 and 1.5 kilograms of methamphetamine between North Carolina and Pennsylvania. Rider has failed to present any evidence to question the reliability of this testimony. *See Sciarrino,* 884 F.2d at 96–98 (explaining that a sentencing court may rely on hearsay evidence). Thus, this testimony alone is sufficient to support the District Court's factual finding as to the amount of methamphetamine that was distributed.

There is, however, additional evidence which supports the District Court's factual finding. Detective Mauery testified that, on September 25, 2004, persons who were present at the party reported that Rider possessed a gallon size Ziploc bag containing between one-quarter and one-half pound of methamphetamine. Although Rider denied having this quantity of methamphetamine, the District Court found that Rider "understate[d] the amount of methamphetamine that he took to this party." *See Sciarrino,* 884 F.2d at 98 ("Issues of credibility are reserved for the district court.").

Moreover, during his testimony, Rider admitted that he knew Pedia concealed methamphetamine in five gallon buckets of dry wall compound when he traveled with him between Pennsylvania and North Carolina. Thus, as a co-conspirator, he is accountable for the amounts of drugs involved in these transactions. *Collado*, 975 F.2d at 992. Therefore, based on the evidence presented at the sentencing hearing, the District Court did not clearly err in finding that the drug quantities consisted of 500 grams to 1.5 kilograms of methamphetamine.

## III

Rider argues that the District Court erred in ordering him to pay $6,963 as restitution to Yoder's family to cover the costs of funeral expenses. Rider maintains that he does not have to pay restitution because the "Government did not sufficiently prove that Appellant intentionally or knowingly caused the death of Jason Yoder." "We conduct plenary review to determine whether a restitution order is permitted under law, but review the specific order only for abuse of discretion." *United States v. Copple*, 74 F.3d 479, 482 (3d Cir.1996).

There is no dispute that 18 U.S.C. § 3663(a) provides that restitution is mandatory for crimes under Title 18 of the United States Code. Under 18 U.S.C. § 3663A(b)(3),[6] the district court can order the defendant to "pay an amount equal to the cost of necessary funeral and related services." Rider objects to the payment of the funeral expenses because he contends that he did not cause Yoder's death.

In *United States v. Robinson*, 167 F.3d 824 (3d Cir.1999), the defendant was convicted of conspiring to distribute heroin. This Court upheld the defendant's enhanced sentence where a person died of a drug overdose from drugs the defendant distributed to another person, who in turn distributed it to the decedent. *Id.* at 830–32. This Court explained: "It was reasonably foreseeable to [defendant] that [the person to whom he gave the drugs] would deliver the drugs to someone else...." *Id.* at 831.

■ Although this Court did not address the issue of restitution in *Robinson*, the same reasoning is applicable here. The record shows that on September 24, 2004, Rider joined a party of six youths, including Yoder. Rider distributed methamphetamine at the party. As in *Robinson*, although he may not have specifically given the drugs to Yoder, it was reasonably foreseeable that Yoder would use the methamphetamine that Rider provided the party members. *Id.* We are persuaded that the District Court did not abuse its discretion in ordering Rider to pay for the funeral expenses, since his methamphetamine distribution lead to Yoder's death.

## IV

■ Rider contends that the District Court erred in not lowering his criminal history category from a category six (VI) to a category five (V). Rider maintains that he is entitled to a one-level downward departure in his criminal history category "due to the determined category over-representing the seriousness of [his] criminal history." The District Court did not rule on this issue. The District Court concluded that this issue was "moot" since at either criminal history category five (V) or

---

**6.** 18 U.S.C. § 3663A(b)(3) provides: "The order of restitution shall require that such defendant ... (3) in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services."

six (VI), Rider's sentencing guideline range exceeded the five-year maximum penalty for each offense. We agree. Regardless of Rider's criminal history category, he is subject to a sentence of 120 months of imprisonment. *See* U.S.S.G. § 5G1.1(a), *supra* note 3.

For the foregoing reasons we AFFIRM the District Court's sentencing order.