**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3814

_____

UNITED STATES OF AMERICA


v.

WILLIAM J O'BRIEN, III,
                                        Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-15-cr-00021-001)
District Judge: Honorable Nitza Quiñones Alejandro

_____


Submitted under Third Circuit L.A.R. 34.1(a)
on September 15, 2017

Before: VANASKIE, RENDELL, and FUENTES, Circuit Judges

(Opinion filed: June 19, 2018)

$O P I N I O N^*$

**RENDELL**, <u>Circuit Judge</u>:

## I. BACKGROUND

For nearly three years, Dr. William O'Brien prescribed large quantities of medically-unnecessary oxycodone, methadone, and alprazolam to individuals in exchange for cash and sexual favors.[1] In 2013, O'Brien prescribed 120 oxycodone pills and sixty methadone pills for one of his "patients", Joseph Ennis. **Supp. App. 986, 997-98.** Five days later, Ennis was discovered dead in his apartment, with high levels of oxycodone, methadone, and a third drug, cyclobenzaprine, in his blood.[2] **Supp. App. 1321.**

O'Brien was subsequently charged with two counts of conspiracy to dispense and distribute a controlled substance (21 U.S.C. § 846), 114 counts of distributing a Schedule II controlled substance (21 U.S.C. § 841(a)(1), (b)(1)(C)), seven counts of distributing a Schedule IV controlled substance (21 U.S.C. § 841(a)(1), (b)(1)(E)), one count of dispensing a controlled substance that resulted in death (21 U.S.C. § 841(a)(1), (b)(1)(C)), one count of conspiracy to engage in money laundering (18 U.S.C. § 1956(h)),

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Oxycodone and methadone are Schedule II opioid-based controlled substances. 21 C.F.R. § 1308.12(c). Alprazolam, typically referred to by its brand-name, Xanex, is a Schedule IV controlled substance. 21 C.F.R. § 1308.14(c).

[2] O'Brien had not prescribed cyclobenzaprine for Ennis. **Supp. App. 1321.**

one count of conspiracy to commit bankruptcy fraud (18 U.S.C. § 371), and one count of making a false oath in bankruptcy proceedings (18 U.S.C. § 152(2)).

At a pre-trial hearing on the government's motion to remove O'Brien's privately-retained counsel due to a conflict of interest, O'Brien told the court that he intended to fire his counsel and proceed pro se. **Supp. App. 4.** The District Court strongly advised him not to do so, but O'Brien maintained that he "would like to exercise [his] 6th Amendment rights." Supp. App. 4. The District Court heard argument on, and ultimately granted, the government's motion to remove O'Brien's conflicted counsel. **Supp. App. 20.**

The District Court held a hearing on O'Brien's oral motion to proceed pro se. **Supp. App. 27.** Prior to the hearing, the government filed a motion asking the District Court to appoint counsel to advise O'Brien on his request to proceed pro se. **Supp. App. 1387-90.** O'Brien opposed the government's request and again asserted his right to proceed pro se. **Supp. App. 1387-90.** The District Court did not appoint O'Brien counsel. At the beginning of the hearing, the government asked the District Court to appoint O'Brien counsel to represent him at the hearing. **Supp. App. 29.** The District Court denied the government's request and proceeded with a *Peppers* colloquy.[3] **Supp. App. 35.** O'Brien answered all the District Court's questions and repeatedly stated that he understood the law and the implications of proceeding pro se. **Supp. App. 29-45.** The District Court concluded that O'Brien had knowingly and voluntarily waived his right to

---

[3] In *United States v. Peppers*, 302 F.3d 120 (3d Cir. 2002), we provided a list of fourteen questions intended to guide courts in determining whether a defendant's decision to proceed pro se is knowing, intelligent, and voluntary.

3

counsel, granted his request to represent himself, and appointed an attorney as standby counsel. **Supp. App. 48.**

O'Brien proceeded to trial. A parade of witnesses, a confidential informant, videotape evidence, and expert testimony indicated that O'Brien had prescribed oxycodone and methadone to numerous individuals, including Joseph Ennis, outside the usual course of professional practice and for no medical purpose. **Supp. App. 768, 791, 935-36, 938, 942-47, 1146, 1127-28.** Two medical experts testified that Ennis had died from a combination of oxycodone and methadone. **Supp. App. 1291, 1294, 1355, 1379.** Although they disagreed on the exact role played by the third drug, cyclobenzaprine, they agreed that, absent the oxycodone and methadone, Ennis would not have died.[4]

Peter Marrandino, a cooperating codefendant and O'Brien's former patient, testified on behalf of the government. O'Brien's cross-examination of Marrandino lasted two days. On the first day, O'Brien questioned Marrandino about the possibility that, in exchange for his testimony against O'Brien, Marrandino could receive a lighter sentence. **Supp. App. 251-52.** Marrandino answered O'Brien's questions willingly and testified that he indeed hoped to receive a lighter sentence in exchange for his cooperation. *Id.* On the second day of cross-examination, O'Brien asked Marrandino several questions about his plea agreement, which said that the government would file a "5K" in Marrandino's

---

[4] Dr. Stephen Thomas testified that cyclobenzaprine did not contribute at all to Ennis's death. **Supp. App. 991, 1283-84, 1288.** Dr. Ian Hood testified that the cyclobenzaprine may have contributed to Ennis's death but that, absent the methadone and oxycodone, cyclobenzaprine would not have caused Ennis's death. **Supp. App. 1379.**

case in exchange for his testimony.[5] Supp App. 345-46. When Marrandino indicated that he did not understand the technicalities of the 5K process, the District Court stepped in to explain the 5K motion process to the jury. **Supp. App. 347.** The District Court then said "that's as much as we are going to go into the 5K1.1 motion." Supp. App. 347. O'Brien did not ask Marrandino any additional questions about his plea agreement or his expectation of a reduced sentence.

Angela Rongione, another cooperating codefendant and O'Brien's former office manager, also testified on behalf of the government. At two separate points during cross-examination, O'Brien questioned Rongione about her expectation of a reduced sentence in exchange for her testimony. **Supp. App. 545, 627-28.** When O'Brien attempted to broach the subject a third time, the District Court sustained the government's objection on the grounds that Rongione had already testified on that issue. **Supp. App. 743.** O'Brien asked Rongione one more time if she was testifying in order to receive a reduced sentence, then pursued no further questions on the topic. **Supp. App. 743.**

After the close of evidence, the District Court instructed the jury. It gave the following instruction on the charge of dispensing a controlled substance resulting in death under 21 U.S.C. § 841(b)(1)(C):

> To find the defendant guilty of distributing or dispensing oxycodone or methadone outside of the usual course of professional practice and not for a legitimate medical purpose that results in death, you must find that the

---

[5] Under § 5K1.1 of the United States Sentencing Guidelines, the government may motion a sentencing court to depart from the guidelines and impose a reduced sentence on a defendant who has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.

government has proved beyond a reasonable doubt each of the elements of distribution or dispensing of a controlled substance outside the usual course of professional practice and not for a legitimate medical purpose, which I have just explained to you.

In addition to these elements, you must also find that the government has proved beyond a reasonable doubt that oxycodone and methadone distributed by the defendant resulted in the death of another, specifically, Joseph Ennis.

In order to establish that these controlled substances were distributed or dispensed by the defendant [and] resulted in the death of Joseph Ennis, the government must prove that Joseph Ennis died as a consequence of his use of oxycodone and methadone that the defendant distributed or dispensed on or about the date alleged in the indictment.

The law provides that . . . death is a consequence of a victim's use of [a] controlled substance that was distributed or dispensed by the defendant, a more serious offense is committed regardless of whether the defendant knew or should have known that death [would] result.

There is no requirement that death resulting from the use of [a] controlled substance was a reasonably foreseeable event or that the controlled substance was a proximal cause of the death. A finding by you that[,] but for the victim's ingesting of the charged controlled substance, distributed or dispensed . . . by the defendant, the victim would not have died[,] satisfies the standard.

The fact that Joseph Ennis may have used other drugs in addition to oxycodone and methadone is not relevant if you determine that he would not have died without ingesting these two substances, the oxycodone and the methadone. That is, the defendant cannot be found guilty absent evidence that the victim would have lived but for [the] oxycodone and methadone used which were prescribed by the defendant. Supp. App. 1383-85.

The jury found O'Brien guilty of all counts except four of the distribution counts. **App. 2.**

## II. ANALYSIS

### A. District Court's Failure to Appoint Counsel for O'Brien's *Peppers* Hearing

First, O'Brien argues that the District Court's failure to appoint counsel to represent him at his *Peppers* hearing violated his Sixth Amendment right to counsel. Because this issue was not raised before the District Court, we review for plain error. *See* Fed. R. Crim. P. 52.[6] A defendant establishes plain error by proving that the court erred, that the error was obvious under the law at the time of review, and that the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997).

O'Brien does not take issue with the District Court's *Peppers* colloquy or its subsequent conclusion that his waiver of counsel was knowing and voluntary. Instead, he challenges the District Court's failure to appoint counsel to represent him at the *Peppers* hearing itself. However, O'Brien has not identified, nor have we found, any legal authority supporting the proposition that a defendant must be represented by counsel at a hearing to waive the right to counsel. Thus, even if the District Court's refusal to appoint counsel to represent O'Brien at his *Peppers* hearing was erroneous, that error is not "obvious" under current law, as required under the plain error standard. *Johnson*, 520 U.S. at 467. Thus, O'Brien is not entitled to relief based on this issue.

---

[6] Appellees argue that O'Brien waived his Sixth Amendment right to counsel by repeatedly and explicitly asserting his right to proceed pro se, opposing the government's request to appoint counsel, and rejecting the District Court's offer to allow him to consult with counsel. *See United States ex rel. O'Connor v. State of New Jersey*, 405 F.2d 632, 634 n.2 (3d Cir. 1969) ("The Supreme Court has defined waiver as 'an intentional relinquishment or abandonment of a known right or privilege.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). However, we assume for purposes of this appeal that O'Brien has not waived his Sixth Amendment claim.

**B. Cross-Examination of Marrandino and Rongione**

Next, O'Brien argues that the District Court erred in curtailing his cross-examination of Marrandino and Rongione regarding their expectations of reduced sentences in exchange for their testimony. We review a District Court's limitation on cross-examination of witnesses for abuse of discretion, *United States v. Ellis*, 156 F.3d 493, 498 (3d Cir. 1998), and we will only reverse if the limitation "is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to the substantial rights of the defendant," *United States v. Friedman*, 658 F.3d 342, 352 (3d Cir. 2011) (quoting *United States v. Casoni*, 950 F.2d 893, 918-19 (3d Cir. 1991)).

A criminal defendant "states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness[.]" *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Inquiring into a cooperating defendant's expectations for leniency is appropriate, as potential leniency in exchange for testimony provides a witness "a motive for favoring the prosecution in his testimony." *Id.* at 679. However, even if a court errs in limiting a defendant's ability to question a witness regarding his or her expectations of leniency, the error is harmless unless a reasonable jury would have received a significantly different impression of the witness if the defendant had been permitted to pursue his proposed line of inquiry. *See United States v. Chandler*, 326 F.3d 210, 221 (3d Cir. 2003) (citing *Van Arsdall*, 475 U.S. at 680).

8

O'Brien argues that his right to cross-examine Marrandino was violated when the District Court foreclosed further discussion of the 5K process. However, any error the District Court may have committed by limiting further questioning on this subject was harmless. O'Brien had already questioned Marrandino about his hope of leniency in exchange for his testimony. Marrandino had answered those questions willingly, and the jury was given an adequate opportunity to evaluate his credibility in light of his potential bias. A reasonable jury would not have received a significantly different impression of Marrandino if O'Brien had been permitted to ask him additional questions about the details of his plea agreement or the 5K motion process.

O'Brien argues that his right to cross-examine Rongione was violated when the District Court sustained the government's objection to questions regarding Rongione's hope for a reduced sentence in exchange for her testimony. However, O'Brien had been permitted to question Rongione on this issue twice before the District Court sustained the government's objection to further questioning. Further interrogation would have been repetitive, and a reasonable jury would not have received a significantly different impression of Rongione if O'Brien had been permitted to ask those questions a third time. Therefore, the District Court's limitation of O'Brien's opportunity to cross-examine Marrandino and Rongione was harmless.

### C. Jury Instruction

At the charging conference, O'Brien's standby counsel raised four objections to the proposed jury instruction on the charge of dispensing a controlled substance resulting in death under 21 U.S.C. § 841(b)(1)(C). **Supp. App. 1432-34.** O'Brien raises the same

9

four issues on appeal. We review jury instructions de novo to determine whether, if taken as a whole, they properly appraised the jury of the issues and the applicable law. *Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135, 138 (3d Cir. 1985). Absent an affirmative misstatement of the applicable law, our review is for an abuse of discretion. *United States v. Maury*, 695 F.3d 227, 261 (3d Cir. 2012).

First, O'Brien argues that the jury should have been instructed that they could only find him guilty if the controlled substance that caused Ennis's death was taken "in accordance with instructions by the prescribing physician." Br. for Appellant at 21. A defendant is guilty of violating 21 U.S.C. § 841(b)(1)(C) if he unlawfully distributes a controlled substance and if "death or serious bodily injury results from the use of such substance." O'Brien has not provided, nor can we find, any legal support for the notion that a physician who illegally prescribes a controlled substance is only guilty for a death that results from the use of the controlled substance if the victim ingested it in accordance with the instructions that accompanied the illegitimate prescription. Thus the jury instruction accurately stated the applicable law.[7]

---

[7] O'Brien also suggests that this additional instruction was necessary because Ennis may have obtained methadone and oxycodone from a source other than O'Brien. However, the jury instructions made clear that, in order to find O'Brien guilty of distribution of a controlled substance resulting in death, the jury had to find that the controlled substance distributed by O'Brien was the cause of Ennis's death. *See* Supp. App. 1384 ("You must also find that the government has proved beyond a reasonable doubt that oxycodone and methadone distributed by the defendant results in the death of another, specifically, Joseph Ennis. . . . [T]he government must prove that Joseph Ennis died as a consequence of his use of oxycodone and methadone that the defendant distributed or dispensed on or about the date alleged in the indictment.").

Next, O'Brien argues that the following phrase was prejudicial: "The law provides that whenever . . . death is a consequence of a victim's use of a controlled substance that was distributed or dispensed by the defendant, a more serious offense is committed." However, this is an accurate statement of the law: 21 U.S.C. § 841(b)(1)(C) prescribes an enhanced penalty for distribution of a controlled substance when the distribution results in death. *See Burrage v. United States*, 134 S. Ct. 881, 892 (2014) (referring to 21 U.S.C. § 841(b)(1)(C) as a "penalty enhancement provision"). The District Court did not abuse its discretion by clarifying for the jury the relationship between mere distribution of a controlled substance and the more serious crime of distribution of a controlled substance resulting in death.

O'Brien also argues that the jury instruction should have defined the term "proximal cause." The District Court accurately explained the relevant causation standard to the members of the jury: they did not need to find that the controlled substance was the proximal cause of the victim's death, simply that it was the but-for cause. **Supp. App. 1384.** This is an accurate statement of the law. *See Burrage*, 134 S. Ct. at 887-88 (a defendant is guilty of violating the statute if the controlled substance was the but-for cause of the victim's death); *United States v. Robinson*, 167 F.3d 824, 831 (3d Cir. 1999) (the controlled substance need not be the proximate cause of the victim's death). The District Court did not abuse its discretion by declining O'Brien's request to define a complicated causation standard that was not relevant to the jury's verdict. In fact, such a definition may have unnecessarily confused the jury.

11

Finally, O'Brien takes issue with the following phrase: "The fact that Joseph Ennis may have used other drugs in addition to oxycodone and methadone is not relevant[.]" He argues that the presence of a third drug in Ennis's system, cyclobenzaprine, was relevant because Dr. Hood testified that an overdose of cyclobenzaprine could lead to death and that Ennis had high levels of cyclobenzaprine in his system. Read in isolation, this phrase appears problematic, as it suggests that O'Brien could be held responsible for Ennis's death even if his death was the result of a drug O'Brien had not prescribed. However, we must evaluate the jury instructions as a whole. When read in conjunction with the rest of the sentence, this phrase accurately states the applicable law:

> The fact that Joseph Ennis may have used other drugs in addition to oxycodone and methadone is not relevant *if you determine that he would not have died without ingesting these two substances, the oxycodone and the methadone.* That is, the defendant cannot be found guilty absent evidence that the victim would have lived but for [the] oxycodone and methadone used which were prescribed by the defendant. Supp. App. 1385 (emphasis added).

Read as a whole, the jury instructions accurately informed the jury of the applicable law: O'Brien could only be found guilty of violating 21 U.S.C. § 841(b)(1)(C) if the oxycodone and methadone he unlawfully prescribed were the but-for cause of Ennis's death, even if Ennis took other drugs as well. Thus, O'Brien's claim that the jury instructions were erroneous fails.

### III. Conclusion

For the foregoing reasons, we affirm the orders of the District Court.

12